Don K. WHITE and Alice S. White, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. C 80–0083–J.

United States District Court, D. Utah., C. D.

May 15, 1981.

Dan S. Bushnell, Kirton & McConkie, Salt Lake City, Utah, for plaintiffs.

Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, Robert S. Horwitz, Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

JENKINS, District Judge.

This is an action for an income tax refund. The matter came on for hearing before the court on Cross-Motions for Summary Judgment. Plaintiffs were represented by Dan Bushnell and Robert Lunt. Defendant was represented by Robert Horowitz. The court heard oral argument and took the matter under advisement. Upon reviewing the memoranda submitted, governing legal authority, and the arguments made at hearing, the court renders the following memorandum opinion.

Jurisdiction of the court is invoked pursuant to 28 U.S.C. § 1346(a)(1) and is not disputed. Venue is laid in the Central Division of the District of Utah under 28 U.S.C. § 1402(a)(1) and is also undisputed. The court finds both jurisdiction and venue to be proper.

The questions presented for determination by the Court are whether: (1) monies paid by plaintiffs to a church-designated travel agent for their son's travel to a site of missionary service, and (2) monies paid by the plaintiffs directly to their 19-year-old son to support him during a period of missionary service by him for his church are "charitable contributions" within the meaning of the Internal Revenue Code, 26 U.S.C.A. § 170(c), and thus deductible by plaintiffs from their adjusted gross income when computing taxable income. 26 U.S.C.A. § 170 provides in part as follows:

(1) General rule.—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary.

\* \* \* \* \* \*

(c) Charitable contribution defined.—For the purpose of this section the term "charitable contribution" means a contribution or gift to or for the use of—

\* \* \* \* \* \*

(2) A corporation, trust, or community chest, fund or foundation—

\* \* \* \* \* \*

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes,

The Church of Jesus Christ of Latter-Day Saints (hereinafter "LDS Church") has been determined to be such an organization and is listed in the Internal Revenue Service Publication No. 78, *Cumulative List of Organization*, contributions to which are deductible under Section 170 of the Internal Revenue Code. Neither plaintiff's son nor the designated travel agent appear on that list.

The facts are uncontroverted.

Plaintiffs, Don and Alice White are residents of Salt Lake City, Utah. The plaintiffs and their son, Lyle, are members of the LDS Church.

The LDS Church operates a world wide missionary program. By letter dated September 20, 1978, plaintiff's son, Lyle was notified that he had been called on a mission for 2 years of voluntary service as an LDS missionary. The letter indicated he was to be assigned to Tampa, Florida. On November 16, 1978, Lyle reported to the Church's Missionary Training Center in Provo, Utah. He was ordained and set apart as a missionary in his Church on that date and spent the next four weeks at the center receiving training.

On December 20, 1978, Lyle began service in the Florida Tampa Mission. The money needed to support Lyle while at Provo and at Tampa was supplied by his parents, the plaintiffs.

Plaintiffs, in response to a form letter from Murdock Travel, Inc. (Murdock) sent $100 to Murdock to help defray Lyle's transportation expenses from Utah to the Florida Tampa Mission. Murdock is a commercial travel agency which arranges travel on behalf of the Church.

Between November 16, 1978 and December 19, 1978, plaintiffs deposited $560 in Lyle's personal checking account. Lyle was the sole authorized signator on the account. The monies deposited were used by Lyle for expenses at the Missionary Training Center and for food, housing, transportation, proselytizing materials, recreation expenses and for the purchase of some personal property while in Florida.

On April 15, 1979, plaintiffs filed their joint income tax return for 1978 with the Internal Revenue Service. No deduction was taken on that return for the amounts deposited by plaintiffs in Lyle's account or for the $100 paid to Murdock.

On September 21, 1979, plaintiffs filed an amended joint income tax return for 1978 with the Internal Revenue Service. The amended return claimed an additional deduction of $795 as a charitable contribution and sought a refund of $224. In the amended return, the plaintiffs claimed that the $100 paid Murdock, together with the $695[1] deposited in Lyle's account in 1978, were charitable contributions made to the LDS Church and deductible under § 170 of the Internal Revenue Code.

Plaintiffs claimed Lyle as a dependent on the original and amended returns. Defendant's Motion for Summary Judgment, Appendix M and N.

By letter dated February 7, 1980, the Internal Revenue Service disallowed plaintiffs claim for a refund.

## STANDARD OF DEDUCTIBILITY FOR CHARITABLE CONTRIBUTIONS

By what standard do we measure the deductibility from gross income of a charitable contribution?

The broad measure has two facets: the nature of the recipient and the nature of the contribution. The recipient must be qualified. The contribution must be absolute. A contribution to someone other than a qualified recipient is not deductible. A gift which reserves the control of the gift in the donor is no gift at all.

---

1. Plaintiffs originally incorrectly computed the amount contributed at $695. Plaintiffs actually contributed $560 to Lyle's support. See Attachment 1 to Plaintiffs Memorandum in Support of Motion for Summary Judgment. The difference was contributed by the local LDS Church Ward and by neighbors. Don White Deposition at 44, 45.

Neither the designated travel agent nor Lyle, the missionary, is a qualified recipient of charitable contributions within the meaning of Section 170. In order for a payment by plaintiffs to the travel agent or to the missionary to be deductible, such payment must in some fashion be deemed a payment "to or for the use of" the LDS Church, a qualified recipient.

Plaintiffs argue that is exactly what their payments were. The Court disagrees. The payments were to Murdock and to Lyle White. The payments were not to the LDS Church. Had the gift been made directly to the LDS Church, the gift would be deductible. But here, the payments were *to* Murdock and *to* Lyle, not *to* a qualified recipient.

Plaintiffs argue that if the gifts were not "to" a qualified recipient, then such payments were "for the use of" such a qualified recipient, namely the LDS Church, for use in its missionary efforts.

While in a broad sense the Church as an entity obtains a benefit from a well housed, fed and transported missionary, in this case, the specific use to which the funds furnished were put was within the power of the missionary and not within the power of the LDS Church. He spent the funds. The Church did not. He controlled the funds. The Church did not. Purchases of property made with such funds resulted in ownership in him, not ownership in the Church. He had no duty to account to anyone, including the Church, for any surplus funds he received.

Plaintiffs present a series of cases which they assert sanction the deduction. Such do not support plaintiffs' position. The common thread which runs through each case is that the gift was *to* a qualified recipient and the use of such gift was controlled *by* the qualified recipient.

In *Peace v. Commissioner*, 43 T.C. 1 (1964), the qualified recipient was the Sudan Interior Mission. The taxpayers in that case sent contributions in the form of checks directly to the Mission. The checks displayed the names of four individual missionaries. The I.R.S. held that the funds

were earmarked for those individuals and were nondeductible private gifts. In overruling the Service, the Tax Court found that the names of the individual missionaries on the taxpayers checks indicated only the desires of the taxpayers and did not result in divesting the Mission of control over the disposition of the funds. The Court found that in practice, the Mission policy was to place all contributions in a common pool from which disbursements to individual missionaries were made.

In contrast, the Whites' contributions were made directly to their missionary son Lyle, and not to the qualified recipient, the LDS Church. The Church exercised no control over the disposition of the funds. There was no common pool from which disbursements were made by the Church.

In *Davenport v. Commissioner*, P–H Memo T.C. ¶ 75,369 (1975), the Tax Court was concerned with two donations. First, the taxpayers claimed a charitable deduction for monies they had paid to the Everlasting Gospel, Inc., a qualified recipient. Second, taxpayers claimed deductions for rents paid on a house in Dallas, Texas. The house was used by the taxpayers' son who was the founder, minister, chief evangelist, and president of the Everlasting Gospel, Inc., a charitable organization. The I.R.S. disallowed both deductions because they were specified for the use of a specific individual. The Tax Court found that the monies paid to the Everlasting Gospel, Inc. were deductible. Although the court did not specifically detail the reasoning which supported its finding, as we read the case, the court found that the taxpayers by giving funds to their son as the founder, minister, chief evangelist and president of the Everlasting Gospel, Inc., they in fact were giving it to the charitable institution. The contribution was therefore deductible.

The monies paid directly to the landlord for rent on the house used by their son, were found by the Tax Court to be nondeductible. By sending the funds directly to the landlord, the taxpayers had deprived the charitable entity of any "option[s]" it may have had with respect to its use of the funds. As the court pointed out:

[T]he charity must have *full control* of the funds donated in order for a taxpayer to be entitled to a charitable deduction, and such is not the situation where the funds are designated by the donor for the use of a particular individual.

*Id.* at 1587–1588 (citations omitted and emphasis added).

Unlike the taxpayers in *Davenport*, the Whites did not give their donation directly to the qualified recipient, but to their son, who is not a qualified recipient. By giving the donated funds directly to their son rather than to the qualified recipient, plaintiffs have not enabled a qualified recipient (the Church) to exercise full control over the contribution.

In *Winn v. Commissioner*, 595 F.2d 1060 (5th Cir. 1979) the qualified recipient was the Benoit Presbyterian Church. The taxpayer gave the check directly to an elder in the Church who in turn deposited the funds in the account of an individual missionary. The Fifth Circuit found it unimportant that the Church elder also happened to be the missionary's father or that the funds were designated by the taxpayer to go into a Church fund established expressly for the benefit of the individual missionary. As the Court stated:

[P]roof that the church in Benoit sponsored "Sara Barry Days" for the express purpose of collecting funds for this part of its work, *that an officer of the church took the funds donated and dealt with them as the church wished,* and that the funds went to the support of the work

the church intended is sufficient to establish that the funds were donated for the use of the Benoit Presbyterian Church.

*Id.* at 1065 (emphasis added).

The qualified recipient in this case, the LDS Church, did not receive the funds donated by the plaintiffs. Nor did a church official entitled to receive and disburse funds ever receive and disburse the funds. The monies were paid directly to persons who were *not* qualified recipients and disbursed by them. Case law does not support the deduction of funds contributed in this fashion. See *Peace, supra; Winn, supra; Mayo v. Commissioner,* P–H Memo T.C. ¶ 71,117 (1971) (Donation paid directly to individual missionaries instead of through established Mennonite organizational channels is not deductible); *Morey v. Riddell,* 205 F.Supp. 918 (S.D.Cal.1962) (Donation paid directly to four of the church's ministers is deductible because church had no formal structure in terms of articles of incorporation or separate legal existence and ministers received and applied funds on behalf of the entire church, not just themselves).

█ Finally, plaintiffs contend that Lyle, as a missionary and ordained minister of the LDS Church, acts as an agent in receiving and disbursing contributions for that institution.[2] Contributions may be deductible if received and disbursed by an authorized agent of a qualified recipient. *Thomason v. Commissioner,* 2 T.C. 441, 444 (1943). However, when the contributions received by an agent are to be used solely for the

---

**2.** It should be made clear that the Court is not presented with the question as to whether a missionary who expends funds himself in missionary service can take such expenditures as 170(c) deductions from *his* income. That question has not been asked. The question presented here is whether a third party—a parent who furnishes funds directly to a specific missionary for his support—may take the funds so furnished as a charitable deduction. Indeed, Internal Revenue Regulation 26 C.F.R. § 1.170(a)(2) expressly provides:

No deduction is allowable for contribution of services. However, unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a de-

ductible contribution. For example, the cost of a uniform without general utility which is required to be worn in performing donated services is deductible. Similarly, out-of-pocket transportation expenses necessarily incurred in rendering donated services are deductible. Reasonable expenditures for meals and lodging necessarily incurred while away from home in the course of rendering donated services also are deductible. For the purpose of this section, the phrase "while away from home" has the same meaning as that phrase is used for purposes of section 162.

See also *Smith v. Commissioner of Internal Revenue,* 60 T.C. 988 (1973).

support of that agent, the contribution is non-deductible, for it lacks the essential requirement of "indefiniteness."

In *Leslie v. Commissioner*, P–H Memo T.C. ¶ 77,110 (1972), the taxpayers issued a check to the Reverend Alexander who headed a Presbyterian Mission in Brazil. The I.R.S. disallowed the deduction on the theory that the contribution was made to an individual rather than to a charitable organization. The Tax Court, in overruling the I.R.S. and allowing the deduction, found it dispositive that "the money was *not* to be used *for Alexander's personal use or even at his discretion* but was to be used in carrying out the mission work of the Presbyterian Church." (Emphasis added.) Alexander took the funds as the agent and representative of the Church and applied them to the work of the Presbyterian Mission. This was only allowed because the contribution "was *not* given to Alexander *for his personal use or even for his individual use in mission work.*" (Emphasis added.)

In contrast, plaintiffs contributions, received by their son, were used solely for his support and under *Leslie* are non-deductible. See *Morey v. Riddell, supra* at 921.

In the legal sense, a contribution must be uncompelled, voluntary, without "consideration" in the legal sense, absolute in the sense of conveying future control of the item contributed, and for the ultimate benefit of unidentified and indefinite numbers of persons—the public at large, or a significant segment thereof.

The quality of indefiniteness or generality is one feature which distinguishes a charitable contribution from a private gift. The first is deductible. The second is not.

This generality, or quality of indefiniteness is really just another way of saying that the specific *use* to which funds are to be put is a choice to be made by the charity from among the large spectrum of possible uses and is not to be made by the donor. The charity may honor a request or a desire of the donor but need not do so and may not be compelled to do so. The funds once donated, belong to the charity and do not then belong to the donor. Plaintiffs, by giving their donations directly to their son, have precluded the Church from exercising the options available to it in disbursing the funds. The donation thus lacks the required generality and indefiniteness to make it deductible.

There are several good public policy reasons for adhering to the plain terms of the statute: *First*, qualified charitable recipients are limited by the Congress to a particular class of institutions, the activities of which are specifically limited and are thought to be of benefit to society in general. The Congress encourages good works by providing tax incentive to persons generous enough to contribute to such institutions. *Second*, a limited number of prequalified charitable recipients are easier for the sovereign to monitor. Oversight and auditing problems are minimized. In short, funnelling funds into the common pool of a charitable or religious institution makes the governmental administrative task far easier in making sure funds so deducted are so used. *Third*, adherence provides assurance to the favored institutions and, equally important, to the public that the opportunity for abuse in the receipt and use of funds by persons who need not account to the institutions for their receipt and disbursement is minimized. It has been suggested that extending the law by interpretation would obviate the need for extensive record-keeping. Record-keeping is part of the price one pays for favored treatment by Congress in encouraging persons of good will to make contributions which are tax deductible.

CONCLUSION

■ In sum, by making the two payments in question directly to individuals other than a qualified recipient, plaintiffs precluded full control of contributed funds by the qualified recipient and the opportunity to channel the funds to other available options. The funds were earmarked for a particular individual. Discretion as to the manner in which the contribution was spent lay in the donee—not the Church. The contributions were not "to or for the use of" a qualified charitable or religious institution under Section 170 and are not deductible.

In light of the foregoing it is here OR-DERED that plaintiff's Motion for Summary Judgment is denied and defendant's Motion for Summary Judgment is granted. Let judgment be entered in accordance with Rule 58, Federal Rules of Civil Procedure.